## Parlaman Distributing Company License

*Snyder, Balmer & Kershner*, for appellant.

*Linn H. Schantz*, for Pennsylvania Liquor Control Board.

HESS, J., May 20, 1948.—This proceeding is an appeal from an order of the Pennsylvania Liquor Control Board suspending for five days an importing distributor's license issued to appellant, Parlaman Distributing Company. After hearing, the board made the following finding of fact: "On June 16, 1947, licensees, their servants, agents or employes purchased malt or brewed beverages from a source in Pennsylvania other than an importing distributor or manufacturer." The order of suspension was then issued.

An appeal was taken to this court, a hearing held and the case was argued before the court en banc. Counsel for the board states in his brief that the question raised in the appeal has not been previously considered by any Pennsylvania court.

As indicated, appellant is the holder of an importing distributor's license. Previous to July 14, 1947, it accepted an order for 102 half-barrels of Kaier's beer to be used by the Teamsters' Local Union No. 429 at a picnic to be held at the Reading Fair Grounds on July 15, 1947. The teamsters' union gave appellant a check

for $1,352 in payment of said beer. On July 15, 1947, it rained and on the morning of the 16th, which was a Monday, the unused beer consisting of 89 half-barrels was returned to appellant in the original sealed containers. The latter drew a check to the order of the teamsters' union for said beer that was returned and delivered the same to the teamsters' union. An agent of the Pennsylvania Liquor Control Board came to appellant's place of business and told one of the partners of appellant that this was illegal. Appellant then regained possession of the check from the teamsters' union (the check had never been deposited or cashed) and the unused beer was later returned to the teamsters' union. The record in effect, is an agreed statement of facts, all of them being apparently conceded by the parties.

The question presented involves a determination of whether or not under the facts in the record before us the transaction constituted a sale of beer by the teamsters' union, admittedly not the holder of an importing distributor's or manufacturer's license, to appellant, Parlaman Distributing Company. Should we determine the transaction to have been a sale, then the board's finding of fact was correct, the penalty imposed was proper and cannot be disturbed by this court: Appeal of Colonial Grill, 93 misc. docket, 1947, Court of Q. S. of Berks Co.; Pacewicz Liquor License Case, 152 Pa. Superior Ct. 123.

It is not alleged by the board that the return of 89 half-barrels of beer by the teamsters' union to appellant was done in bad faith. Originally, 102 half-barrels were ordered for a picnic and inclement weather restricted attendance so that the greater part of the beer was unused. It would certainly be difficult to persuade a reasonable individual that any wrongful act was committed when the unused beer was returned for credit. At the time in question the United States Government was greatly concerned with saving grain for

European Relief and to permit 89 half-barrels of beer to be wasted because the law does not allow a distributor to accept its return and credit the original purchaser with its cost would be, to say the least, an unfortunate anomaly of the law. Although denying the right of the teamsters' union to return the beer to the distributor, counsel for the board could suggest no reasonable alternative under the law other than for the purchaser to consume the beer in some manner or let it be destroyed.

The Beverage License Law of May 3, 1933, P. L. 252, sec. 2(e), as last amended by the Act of July 24, 1941, P. L. 480, defines "importing distributor" as meaning and including "persons licensed by the board to engage in the purchase from manufacturers and other persons located outside this Commonwealth, and from persons licensed as manufacturers and importing distributors under this act, and the resale of malt or brewed beverages in the original sealed containers as prepared for the market by the manufacturer at the place of manufacture, but not for consumption on the premises where sold and in quantities of not less than two hundred eighty-eight fluid ounces". Subsection (o) of the same act defines "sale" or "sell" as including "any transfer of malt or brewed beverages for a consideration". The board contends that appellant's accepting the beer from the teamsters' union, admittedly not a source from which an importing distributor may lawfully purchase, and giving in return a check for the cost price was a "transfer of malt or brewed beverage for a consideration" and therefore a violation of the law. Counsel for the respective parties have agreed that in deciding this case the court should not take into consideration the fact that after being notified by an enforcement officer that appellant could not take back the beer appellant secured the return of the refunding check.

It is clear to us under the abbreviated testimony taken at the hearing that the parties did not themselves consider the transaction as a "sale" or "resale" but rather as a return of merchandise for credit when an unforeseen circumstance prevented the use of the merchandise by the purchaser. The situation is much the same when one purchases for use in painting one's dwelling a large quantity of paint, accepts delivery thereof and pays cash for same. After the building is completely painted the purchaser finds that he overestimated the paint required and has left on his hands several quarts of paint which are of no use to him. His act of going to the seller, explaining the situation and securing the assent of the seller to accept a return of the unused paint and refunding to the purchaser the cost thereof would not be regarded by the lay individual or by a lawyer as a "sale". The example just cited or a similar set of facts is of common, everyday occurrence to all of us and certainly is not illegal. The board contends, however, that when the same thing is done with beer a violation of law takes place because of the previously cited language of the Beverage License Law defining "sale".

We are of the opinion, however, that the Beverage License Law itself provides authority for doing what was done in the instant case. Section 2($g$) thereof defines "original containers" as meaning and including "bottles, casks, kegs or other suitable containers that have been securely capped, sealed or corked by the manufacturer at the place of manufacture, with the name and address of the manufacturer permanently affixed to the bottle, cask, keg or other container, or to the cap or cork used in sealing same, or to a label securely affixed to a bottle". It will be noted that "original containers" are defined as "suitable containers that have been securely capped, sealed or corked by the manufacturer" thus implying that the containers contain beer or otherwise there would be no need to

refer to them as being "securely capped, sealed or corked". We are of the opinion that as used in the definition cited original container refers not only to the container but also the contents thereof.

Section 23 of the same law sets forth 35 specific violations of the law, among which is subsection (V) which prohibits licensees generally from selling or offering "to sell, or purchase or receive any malt or brewed beverages except for cash". The same subsection, however, contains an exception providing that

*"Nothing herein contained shall prohibit a licensee from crediting to a purchaser the actual price charged for original containers returned by the original purchaser as a credit on any sale, or from refunding to any purchaser the amount paid by such purchaser for such containers,* or as a deposit on such containers when title is retained by the vendor if such containers have been returned to the manufacturer, distributor, importing distributor or other vendor."

The portion italicized refers to transactions involving a credit to the purchaser of the actual price charged for "original containers returned by the original purchaser as a credit on any sale". The language refers only to "original containers" and does not say whether they should be with contents or without contents. Inasmuch as the section previously referred to defined "original containers" as being "suitable containers that have been securely capped, sealed or corked" we take it that the legislature must have meant to include a return not only of the container but also of the contents. This opinion is fortified by the use of the expression, "the actual price charged". The record before us indicates that the credit for the returned beer was for the actual price charged for both the containers and the beer contained in them. This would involve a refund or repayment to the purchaser since under the law the sale in the first place must be for "cash".

The subsequent language of the section quoted refers to returns of "deposits" to the purchaser "on such containers when title is retained by the vendor if such containers have been returned to the manufacturer, etc." It is true that as used here "such containers" must refer to empty containers for most assuredly the vendor would and could not retain title to both the container and its contents. We cannot conclude that this latter provision in any way limits or restricts the italicized portion first discussed but understand it to refer solely to instances where deposits are made upon containers, which the testimony before us does not indicate to have been done or contemplated by the parties.

We conclude that when taking into consideration the definition applied to "original containers" by the legislature, the language in section 23, subsection (V) permitting licensees to refund or give credit to a purchaser for "original containers" returned by the purchaser must be construed to include not only the return of empty containers as now permitted by the board but also the return of "original containers" that remain "securely capped, sealed or corked" and contain the liquid placed therein by the manufacturer. Accordingly, we find that the transaction involving the return of 89 half-barrels of beer in the original containers by the teamsters' union to appellant and the refunding of the purchase price thereof was not a "sale". The finding of fact made by the Pennsylvania Liquor Control Board is reversed.

Counsel for the board contends that to permit a distributor to accept the return of beer in situations such as are present in the case before us might result in rendering the board powerless to act in violations of a serious nature, involving the sale of improperly manufactured and untaxed beer. We cannot understand that our holding in this case under the facts of the record before us would have any such effect. We do not desire to be understood as saying that every return

of beer in original containers would be permissible under our decision. Subsections (XVII), (XVIII) and (XIX) of section 23 of the Beverage License Law, *supra*, make it unlawful for licensees to offer inducements in soliciting or procuring business. In the event that a licensee in order to induce a purchaser to purchase large quantities of beer offered at the time of purchase to accept the return of any unused beer, a violation of the sections mentioned might conceivably result. Such facts, however, are not now before us.

And now, to wit, May 20, 1948, the appeal of Clement Parlaman and N. Schmeck, trading as Parlaman Distributing Company, from an order of the Pennsylvania Liquor Control Board suspending the importing distributor's license of appellant is sustained and the suspension order is reversed.